UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

TERRY CICIO,

                                Plaintiff,

       v.                                              9:11-CV-1196
                                                                    (TJM/ATB)

P. WILLIAMS, et al.,

                                Defendants.

---

TERRY CICIO, Plaintiff, *pro se*
KEVIN P. HICKEY, AAG, for the Defendants

ANDREW T. BAXTER, U.S. MAGISTRATE JUDGE

## REPORT-RECOMMENDATION

### I.   <u>Facts and Procedural History</u>

In this civil rights complaint,[1] plaintiff alleges that on July 3, 2011, while he was incarcerated at Upstate Correctional Facility ("Upstate") he found rocks in his lunch meal, which resulted in a chipped tooth. (Compl. ¶ 6 at CM/ECF p.5, Facts)

---

[1] Plaintiff initially named two other defendants: P.Williams, a Corrections Officer at Upstate, and D. Hoag, the Food Service Administrator at Upstate. (Compl. at CM/ECF p.8). Plaintiff claimed that defendant Hoag, as the Food Service Administrator was responsible for a violation of plaintiff's Eighth Amendment rights when plaintiff found the rock in his food on July 3, 2011 and when plaintiff found a "sorbent packet" in his sloppy joe on September 17, 2011. Plaintiff claimed that on September 6 and 7 (the court assumes that plaintiff was still referring to 2011), defendant Williams told plaintiff she hated him, and that on September 17, 2011, he found the sorbent packet. Plaintiff implies that defendant Williams was somehow responsible for the sorbent packet in his food and alleged that Williams violated plaintiff's Eighth Amendment rights by "harassing" him. (*Id.* at Cm/ECF p.9). On January 11, 2012, Senior Judge McAvoy dismissed all claims against both Williams and Hoag and dismissed any medical care claims as against defendant Beebe. (Dkt. No. 5). The only remaining claims are plaintiff's due process claims against defendants Beebe, Quinn, Isabella and Fischer and a claim against defendant Beebe, alleging that he issued a false misbehavior report in retaliation for "demanding necessary medical care and asking to file a report about the rocks in his food." (Dkt. No. 5 at 6). Judge McAvoy allowed this claim to stand, but dismissed a claim against Beebe that could be read as alleging that he filed the "false" misbehavior report "as part of a 'coverup' attempt to hide Beebe's own wrongdoing. (*Id.*)

(Dkt. No. 1). Plaintiff states that he told defendant Corrections Officer Beebe,[2] who initially allowed plaintiff to keep his food tray so that plaintiff could report the incident. (*Id.* at CM/ECF p.6) However, plaintiff claims that defendant Beebe came back later and requested that plaintiff return the tray, without reporting the incident, stating that plaintiff would see the nurse later, but that plaintiff would not be able to speak with a sergeant about the rocks in plaintiff's food. (*Id.*) Plaintiff claims that defendant Beebe then issued plaintiff a false misbehavior report "to cover up the fact that a rock was found in my tray and that I was purposefully being denied medical attention and that no report of the finding was going to be made." (*Id.*)

Plaintiff states that the misbehavior report charged plaintiff with refusal to hand in his tray, and threats. Plaintiff claims that both charges "were proven false by audio/video. Plaintiff claims that defendant Corrections Captain T. Quinn denied plaintiff due process when he imposed a prehearing restricted diet[3] for one week and

---

[2] The plaintiff misspelled this defendant's name in the complaint. The correct spelling of his name is "Beebe," and the court will use the proper spelling in this report.

[3] The restricted diet involves plaintiff being fed only a "diet loaf," rather than regular meals for a period of time.

changed plaintiff's "level"[4] from Level III to Level I[5] without a hearing. (*Id.* at CM/ECF p.9). Plaintiff claims that because he was found not guilty of the food-related violations, the prehearing restricted diet was not justified.

Plaintiff also alleges that the hearing officer, defendant Isabella violated plaintiff's due process rights at the disciplinary hearing because he was not impartial. (*Id.* at CM/ECF p.10). Plaintiff claims that defendant Commissioner Brian Fischer violated plaintiff's due process rights when he failed to reverse defendant Isabella's decision, when the record "clearly showed that plaintiff was entitled to expungement of the record." (*Id.*)

On April 3, 2012, defendants Beebe, Quinn, Isabella, and Fischer filed a motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 14). After reviewing the motion to dismiss and all the documents that were submitted in support of plaintiff's complaint, I found that the more prudent course of action was to convert defendants' motion into one for summary judgment and allow both parties to supplement their papers accordingly. (Dkt. No. 18). Defendants submitted their

---

[4] Although plaintiff does not make specific reference in his complaint to his definition of "level," the court has determined from the defendants' exhibits that plaintiff is referring to his "Progressive Inmate Movement System" ("PIMS") level. The PIMS system is designed to afford inmates the opportunity to achieve designated privileges according to improvements in their behavior and acceptable custodial adjustment. http//www.doccs.ny.gov/PressRel/06CommissionerRpt/ ProgressInmateMoveSystem.pdf. Failure to maintain acceptable behavior may result in the loss of privileges by virtue of an inmate's removal from a designated PIMS level. *Id.* The Upstate Correctional Facility Directive lists the three levels, indicating that the higher the level from I to III, the more privileges afforded to the inmate. *Id. See Smith v. Artus*, No. 9:07-CV-1150, 2010 WL 3910086, at *5 (N.D.N.Y. Sept. 30, 2010) (discussing PIMS at Upstate).

[5] Although plaintiff's complaint states that his Level was dropped from Level III to Level I, during the disciplinary hearing, plaintiff complained that he was placed on the restricted diet and "moved to pims level II status as my level was dropped." (Dkt. No. 20-3 at CM/ECF p.53 (Hearing Transcript)). This discrepancy is not relevant.

3

additional materials and re-noticed a motion for summary judgment. (Dkt. No. 20). On January 10, 2013, plaintiff was granted an extension of time until March 1, 2013 to file whatever papers he wished to support his case. Plaintiff has failed to do so. Because plaintiff is pro se and may have a more difficult time sending mail, the court waited until today to issue its recommendation. For the following reasons, this court agrees with defendant and will recommend dismissing plaintiff's complaint in its entirety.

## II. **Summary Judgment**

Summary judgment may be granted when the moving party carries its burden of showing the absence of a genuine issue of material fact. Fed. R. Civ. P. 56; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) (citations omitted). "Ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion." *Id*. However, when the moving party has met its burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

In meeting its burden, the party moving for summary judgment bears the initial responsibility of informing the court of the basis for the motion and identifying the portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Where the non-movant bears the burden of proof at trial, the moving party may show that he is entitled to summary judgment by either (1) pointing to evidence that negates the non-movant's claims or (2) identifying those portions of the non-movant's evidence that demonstrate the absence of a genuine issue of material fact. *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006) (citing *Celotex Corp.*, 477 U.S. at 23). The second method requires identifying evidentiary insufficiency, not merely denying the opponent's pleadings. *Id*.

If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Id*. A dispute about a genuine issue of material fact exists if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Additionally, while a court "'is not required to consider what the parties fail to point out,'" the court may in its discretion opt to conduct "an assiduous view of the record" even where a party fails to respond to the moving party's statement of material facts. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citations omitted).

### III.  **Collateral Estoppel**

####   1.  **Legal Standards**

Collateral estoppel or "issue preclusion" bars a party who has had a full and fair opportunity to litigate an issue of fact or law from relitigating that issue once it has

been decided, and as long as that issue was essential to the judgment. *Central Hudson Gas & Electric Corporation v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 368 (2d Cir. 1995); *Beck v. Levering*, 947 F.2d 639, 642 (2d Cir. 1991) (per curiam). There are four elements in the analysis of whether collateral estoppel applies: (1) the issues in both proceedings must be identical; (2) the relevant issue or issues were actually litigated and decided in the prior proceeding; (3) there must have been a "full and fair opportunity" for the litigation of the issues in the prior proceeding; and (4) the issues were necessary to support a valid and final judgment on the merits. *Central Hudson Gas & Electric, supra*. *See also Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir. 1986), *cert. denied*, 480 U.S. 948 (1987).

### 2. Application

Plaintiff in this case brought the almost identical proceeding in New York State Court as an Article 78 proceeding, challenging the disciplinary hearing that resulted from the feed-up tray incident. *In re: Cicio v. Fischer*, 100 A.D.3d 1226, 953 N.Y.S.2d 741 (3d Dep't 2012). The facts as stated by the Appellate Division in its decision, affirming the disciplinary determination are the same facts that plaintiff raises in this federal action. *Id.* On July 3, 2011, plaintiff initially refused to give his feed-up tray back to the correction officer, "claiming that there was glass and/or rocks in his food." *Id.* The Appellate Division notes that the officer determined "that petitioner's claim was valid," and that "petitioner eventually gave the tray to a sergeant." *Id.* The decision also states that the "petitioner threatened physical violence" to the correction officer when he later took the petitioner to be examined by

6

a nurse. This conduct resulted in the disciplinary ticket, charging petitioner with refusing a direct order, violating mess hall policies, interfering with an employee, and making threats. *Id.* The petitioner was found guilty only of the charge of making threats, and the finding was affirmed on administrative appeal.

The Appellate Division held that the misbehavior report, together with the correction officer's testimony provided "substantial evidence supporting the determination of guilt." *Id.* The court also held that the petitioner/plaintiff's claim that he did not threaten the officer "presented a credibility issue for the Hearing Officer to resolve." The court also found that the video tape that was viewed at the hearing "is inconclusive and does not support petitioner's defense." Finally, the Appellate Division specifically found that "upon reviewing the record, we find nothing to indicate that the Hearing Officer was biased or that the determination flowed from any alleged bias." All of the plaintiff's remaining contentions were "considered and are unpersuasive." *Id.*

Every issue that plaintiff raises in this proceeding was raised in the Article 78 proceeding, and they were actually litigated and decided on the merits in the Article 78 proceeding. Plaintiff had a full and fair opportunity to present his arguments and litigate those issues. In fact, the court notes that the Article 78 court's decision indicates that the judges actually viewed the videotape that plaintiff insists would have showed that he was innocent of the threats. The court specifically found the videotape "inconclusive" and determined that the issue was one of credibility. A resolution of the due process claims, including the bias issue was definitely necessary for a final

7

judgment on the merits.

Defendants have included the plaintiff's Article 78 petition as an exhibit so that this court may determine all the issues that he raised because the Appellate Division did not specifically mention all the issues. (*See* Def.s' Ex. A; Dkt. No. 20-3). The court stated only that it reviewed the "other" claims, but found them "unpersuasive." The state court's decision clearly precludes plaintiff from raising his due process claims in this court. A review of the actual Article 78 petition shows that plaintiff also challenged defendant Quinn's imposition of the "diet loaf"[6] without due process and his claim that defendant Quinn changed his PIMS level without due process. (Def.s' Ex. A at CM/ECF p. 7). Any claims against defendant Fischer would also have to be dismissed because the claims against Fischer appear to be related to the alleged affirmance of plaintiff's administrative appeal.[7] Thus, all plaintiff's due process claims would have to be dismissed on the basis of collateral estoppel as against defendants Beebe, Quinn, Isabella, and Fischer. However, even if the court were not recommending dismissal on the basis of collateral estoppel, plaintiff's claims would

---

[6] Plaintiff claimed that he was punished before he was found guilty and was punished "twice" for the misbehavior because the diet loaf restriction was imposed prior to the disciplinary hearing. Plaintiff argues that this shows some sort of bias. However, defendant Quinn recommended that plaintiff be placed on the diet loaf restriction, and that recommendation was approved by the facility superintendent. (Hickey Decl. Dkt. No. 20-3 CM/ECF p.27). Defendant Isabella, the hearing officer had nothing to do with the imposition of the diet. A doctor (Dr. Ferrari) indicated on the form that plaintiff was "medically approved for restricted diet." (*Id.*)

[7] Defendants also argue that defendant Fischer had no involvement in the review of plaintiff's disciplinary hearing. The court need not reach that argument, but notes that the lack of personal involvement would have been an additional basis for dismissal against Fischer. Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and respondeat superior is an inappropriate theory of liability. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citation omitted); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003).

8

fail on the merits.

IV. **Due Process**

   A. **Legal Standards**

In order to begin a due process analysis, the court determines whether plaintiff had a protected liberty interest in remaining free from the confinement that he challenges and then determines whether the defendants deprived plaintiff of that liberty interest without due process. *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001); *Bedoya v. Coughlin*, 91 F.3d 349, 351 (2d Cir. 1996). In *Sandin v. Conner*, the Supreme Court held that although states may still create liberty interests protected by due process, "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . , nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995).

The Second Circuit has explicitly avoided a bright line rule that a certain period of confinement in a segregated housing unit automatically gives rise to due process protection. *See Sims v. Artuz*, 230 F.3d 14, 23 (2d Cir. 2000); *Colon v. Howard*, 215 F.3d 227, 234 (2d Cir. 2000). Instead, cases in this circuit have created guidelines for use by district courts in determining whether a prisoner's liberty interest was infringed. *Palmer v. Richards*, 364 F.3d 60, 64-66 (2d Cir. 2004). A confinement longer than an intermediate one, and under "normal SHU conditions" is "a sufficient departure from the ordinary incidents of prison life to require procedural due process

9

protections under *Sandin*." *Colon v. Howard*, 215 F.3d at 231 (finding that a prisoner's liberty interest was infringed by 305-day confinement). Shorter confinements under normal SHU conditions may not implicate a prisoner's liberty interest.

"SHU confinements of fewer than 101 days could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions . . . or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical." *Palmer v. Richards*, 364 F.3d at 65 (citations omitted). In the absence of a detailed factual record, cases in this Circuit typically affirm dismissal of due process claims where the period of time spent in SHU was short–*e.g.*, 30 days–and there was no indication that the plaintiff endured unusual SHU conditions. *Id*. at 65-66 (collecting cases).

### 2. Application

The court notes that plaintiff was found guilty of only one of the misbehavior charges in this case, and the "penalty" was 90 days in SHU. However the penalty was "suspended" for three months and "deferred" for 90 days. (Dkt. No. 20-3 at CM/ECF p.61). Plaintiff ***never spent any time confined*** for this charge. To the extent that a restricted diet was imposed for one week, there is no indication that plaintiff suffered an "atypical and significant" deprivation as the result of this restriction, particularly because the restriction was approved by a physician before it was imposed. *See Johnson v. Gummerson*, 198 F.3d 233, 1999 WL 822523, at *1 (2d Cir. 1999) (mere imposition of dietary restriction for one week, without an additional allegation that the

10

restriction endangered plaintiff's health does not demonstrate and atypical and significant hardship sufficient to create a liberty interest).

It has also been held that an inmate has no liberty interest in a security classification or mis-classification. *See Walker v. City of New York*, No. 11 Civ. 9611, 2012 WL 3037308, at *2 (S.D.N.Y. July 25, 2012) (citing *Pugliese v. Nelson*, 617 F.2d 916, 923 (2d Cir. 1980); *Walker v. Shaw*, No. 08-CV-10043, at *4-5 (S.D.N.Y. June 23, 2010)). Plaintiff argues that his PIMS level was changed without a hearing. Because the PIMS is a security classification that affords more or less privileges based upon proper adjustment or behavior, like any security classification, it does not create a liberty interest protected by due process.[8] Thus, plaintiff had no liberty interest, and no due process violation could flow from the incidents involved in this complaint.[9]

In any event, a review of the documents submitted by defendants shows that plaintiff was afforded notice of the charges, was provided with a choice of employee assistants, was afforded a hearing with defendant Isabella, was afforded the opportunity to present witnesses, and was given a written reason for the disposition. (Dkt. No. 20-3 at CM/ECF pp.30-62). Defendant Isabella found plaintiff not guilty of two of the three charges,[10] but found defendant Beebe's testimony credible regarding

---

[8] Citing *Sandin*, the New York State Court of Claims has determined that PIMS does not create a liberty interest. *See Callender v. State*, 38 Misc. 3d 651, 956 N.Y.S.2d 792, 797 (N.Y. Ct. Cl. 2012) (citing *Sandin v. Conner*, 515 U.S. at 486).

[9] To the extent that plaintiff alleged that defendant Beebe's misbehavior report was false, this claim alone will not support a due process cause of action when plaintiff was afforded due process at the disciplinary hearing. *See Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986).

[10] The court would also point out that a review of the hearing transcript shows that the hearing officer did not actually find that plaintiff did not commit the food infractions, rather, he asked

11

the threat. (Dkt. No. 20-3 at Cm/ECF p.62).

Plaintiff claims that defendant Isabella was not fair and impartial because "he found plaintiff guilty of making threats even when he viewed the audio/video which showed that plaintiff did no such thing." (Compl. at CM/ECF p.10). An inmate is entitled to a decision-maker who does not "prejudge the evidence and who cannot say . . . how he would assess evidence he has not seen yet." *Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir. 1996) (citing *inter alia Patterson v. Coughlin*, 905 F.2d 564, 570 (2d Cir. 1990)); *Tellier v. Scott*, 94 Civ. 3459, 2004 U.S. Dist. LEXIS 1493, *24 (S.D.N.Y. Feb. 5, 2004) (citations omitted). The requirements of due process, however, are flexible and may vary depending upon the particular situation. *Id.* (citations omitted).

---

defendant Beebe what he saw in plaintiff's tray, defendant Beebe stated that he "[s]aw a stone," and then the hearing officer stated as follows:

> Okay, well at this point, if there was something in your tray or not in your tray, I'll [sic] this is what I'll do at this point. Like you were ah trying to get attention to ah, condition in medical, even though it's not chooseable [sic] to hold your tray, we'll bypass that, you know what I mean and we'll deal with [the] most important issue here, is the threats on staff.
>
> . . .
>
> Okay, so I'm not gonna go into charging you anything on the tray issue [] we're dealing strictly with the threats.

(Dkt. No. 20-3 at CM/ECF pp.50-51). Later during the hearing, defendant Isabella said

> Ah, like I said for the purpose of this hearing the direct order, the interference and the mess hall policies, even though it was inappropriate I could, ah, find you guilty cause I mean the trays weren't handed out. I've overlooked that for the purpose of this hearing . . . we'll just skip right to the threats.

(*Id.* at CM/ECF p.54). In his discretion, the hearing officer focused on the more serious charge and found plaintiff not guilty of the lesser charges. He was not "prejudging" the more serious charge.

12

Prison hearing officers 'are not held to the same standard of neutrality as adjudicators in other contexts." *Id.* (citing *inter alia Russell v. Selsky*, 35 F.3d 55, 60 (2d Cir. 1994)).

Plaintiff in this case simply disagrees with the hearing officer's findings. Although plaintiff equates interpreting the video as "inconclusive" as the equivalent of prejudging the case, there is no evidence that defendant Isabella was not impartial.[11] He was not involved in the incident or the investigation of the incident, and when he viewed the video, it was inconclusive. The fact that the video did not record a threat does not mean that a threat was not made. The hearing officer had defendant Beebe's testimony, claiming that plaintiff threatened him. For constitutional due process purposes (even assuming that a liberty interest existed), all that is required is "some" or "a modicum" of evidence supporting the disciplinary determination. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985) (some evidence standard). Defendant Beebe's testimony was sufficient. The state law standard for sufficiency of evidence is whether the hearing officer's determination is supported by "substantial evidence." *Foster v. Coughlin*, 76 N.Y.2d 964 (1990). This stricter standard is not applicable to federal due process claims. *See Sira v. Morton*, 380 F.3d 57, 76 n.9 (2d Cir. 2004). Thus, plaintiff's due process claim would also fail on the merits, even assuming that a liberty interest existed.

---

[11] As noted above, the Appellate Division also concluded that the videotape was inconclusive and did not support plaintiff's position.

## V. **Retaliation**

### 1. **Legal Standards**

In order to establish a claim of retaliation for the exercise of a constitutional right, plaintiff must show first, that he engaged in constitutionally protected conduct, and second, that the conduct was a substantial motivating factor for "adverse action" taken against him by defendants. *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003). The plaintiff must establish a causal connection between the protected conduct or speech and the adverse action. *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004). The court must keep in mind that claims of retaliation are "easily fabricated" and "pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration." *Bennett*, 343 F.3d at 137 (citation omitted). Accordingly, plaintiff must set forth non-conclusory allegations. *Id.* Finally, even if plaintiff makes the appropriate showing, defendants may avoid liability if they demonstrate that they would have taken the adverse action even in the absence of the protected conduct. *Id.*

The Second Circuit has defined "adverse action" in the prison context, as "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'" *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004)(quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003), *superseded by* 2003 U.S. App. LEXIS 13030 (2d Cir. Feb. 10, 2003)) (omission in original). This objective test applies even if the plaintiff was not himself subjectively deterred from exercising his rights. *Id.*

### 2. Application

When Senior Judge McAvoy first reviewed this action, he dismissed any claim against defendant Beebe to the extent that plaintiff claimed defendant Beebe issued the allegedly false misbehavior report to cover-up Beebe's own wrongdoing. (Dkt. No. 5 at p.6). Judge McAvoy then noted that an inmate could have a valid cause of action where the false misbehavior report was filed in retaliation for the exercise of a constitutional right. (*Id.*) (citing *inter alia Gill v. Riddick*, No. 9:03-CV-1456. 2005 WL 755745, at *7 (N.D.N.Y. Mar. 31, 2005)). Construing the plaintiff's complaint with the utmost liberality, and given the early stage of the proceeding, the court stated that plaintiff "may allege" that defendant Beebe issued the misbehavior report in retaliation for plaintiff demanding necessary medical care and asking to file a report about the rocks in his food. (*Id.*) Thus, the court found that a response from defendant Beebe was necessary concerning the "retaliatory false misbehavior report." (*Id.*)

After reviewing all the documents submitted, there is absolutely no basis for a claim that defendant Beebe retaliated against plaintiff for asking to get medical care or for asking to complain about the rock in his food. The hearing officer came to the conclusion that plaintiff threatened defendant Beebe. As stated above, plaintiff was afforded due process during the hearing, and the hearing officer told plaintiff that he was going to only focus on the threat, even though the officer's statements imply that the food-related charges were also valid. Thus, the misbehavior report was not false, and would have been issued for valid reasons.

If there is no dispute that plaintiff, in fact, committed the most serious of the

15

prohibited conduct charged in the misbehavior report, "even assuming retaliatory motive, [Defendants would be] entitled to summary judgment '[because] there were proper, non-retaliatory reasons for [Plaintiff's] punishment.'" *Carl v. Griffin*, 08 Civ. 4981, 2011 WL 723553, at \*6 (S.D.N.Y. Mar. 2, 2011) (quoting *Hynes v. Squillace*, 143 F.3d 653, 657 (2d Cir. 1998) (recognizing a presumption that a prison official's acts to maintain order are done for a proper purpose). *See also Lowrance v. Achtyl*, 20 F.3d 529, 535 (2d Cir.1994) (defendants met their burden of showing that they would have disciplined the plaintiff even in the absence of the protected conduct because "it was undisputed that [the inmate plaintiff] had in fact committed the prohibited conduct" for which he had been cited in a misbehavior report)). Because plaintiff was found guilty after a hearing that comported with due process for the most serious of the charges, Beebe would not be subject to any liability for retaliatory conduct. *Bennett*, 343 F.3d at 137.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 20) be **GRANTED**, and the complaint **DISMISSED IN ITS ENTIRETY**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28

U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

Dated: March 4, 2013

_____
Hon. Andrew T. Baxter
U.S. Magistrate Judge